ROLSCREEN CO. v. ABRAHAM & STRAUS, Inc.

No. 365.

Circuit Court of Appeals, Second Circuit.

July 17, 1939.

Hoguet, Neary & Campbell, of New York City (Ralph L. Chappell, of Kalamazoo, Mich., Mark N. Donohue, of New York City, and Earl & Chappell, of Kalamazoo, Mich., of counsel), for appellant.

Cooper, Kerr & Dunham, of New York City, and Bair & Freeman, of Chicago, Ill. (W. P. Bair and Will Freeman, both of Chicago, Ill., and Thomas J. Byrne, of New York City, of counsel), for appellee.

Before SWAN, AUGUSTUS N. HAND, and PATTERSON, Circuit Judges.

SWAN, Circuit Judge.

This is an appeal in a patent infringement suit involving the usual issues of validity and infringement. The appellant also relies upon several additional defenses which need not be discussed in the view we take of the case. The two patents in suit both relate to improvements in Venetian blind structures. The plaintiff, an Iowa corporation, is the assignee of the patents; the defendant is a New York distributor of the blinds which are charged to infringe. Kirsch Company, manufacturer of the accused structure, assumed defense of the suit and will hereafter be referred to as the defendant. The interlocutory decree appealed from held valid and infringed several claims of each patent. Additional claims of Reissue No. 20,133 were held not to be infringed, and the plaintiff took no appeal from this part of the decree.

Venetian blinds had been in use for many years prior to Kuyper's entry into the field in 1933. At that time the conventional Venetian blind had at the top a head bar that carried the pulleys for the cords by means of which the slats were raised or lowered. In general, this bar was so placed as to leave a space between it and the window frame, and the hardware which supported it was exposed to view. Below the head bar was a tilting bar having its ends pivotally mounted in brackets which hung from the head bar. From the tilting bar hung the ladder tapes that carried the slats. As it supported their weight, it was thicker than the slats; it was also shorter than the slats, or the head bar. The slats were tilted to the desired position by rocking the tilting bar. With the exception of slight differences in the way the tilting bar was operated, the blinds of all the manufacturers were practically the same. No criticism is made of the operating efficiency of the conventional blind structure, but it is claimed that the exposure of its working parts was offensive to the taste of the purchasing public. Its appearance was further marred by the fact that there was a space between the tilting bar and head bar, resulting in a line of light that was particularly noticeable when the slats were rolled up. Prior to Kuyper, the most common methods of concealing the unsightly operating parts of the structure were the use of draperies or of fascia boards nailed either to the window frame or to the head bar.

The district judge found that until the Century of Progress Exposition in Chicago in 1933 and 1934 there was no great necessity for concealment of the working parts, since curtains or draperies were available for that purpose and did not of-

fend the popular taste; but about that time a demand arose for straight, unadorned hangings. He also found that the use of fascia boards was unsatisfactory, since their installation was likely to mar the window trim and in any event required an operation in addition to putting the blind in place. Kuyper apparently sensed the change in popular taste and rearranged the working parts of the conventional Venetian blind to meet it. His object, as stated in the specifications of Reissue No. 20,133, was "to provide a housing or casing adapted to completely house and conceal the operating mechanism of the Venetian blinds to protect them from accumulation of dust and dirt and at the same time to provide a head member that will be neat in appearance and lend itself to easy installation in a window opening."

The housing, which fits snugly against the window frame, consists of a bottom and two upstanding side pieces. Openings are provided in the bottom through which pass the ladder tapes, tilting cord, lifting cords and lifting cord lock. Within the housing are mounted the raising pulleys and the tilting bar and its rocking mechanism. The main difference between Kuyper's two patents, both granted October 20, 1936, is that the reissue provides two shafts, which rotate in opposite directions, to tilt the slats, while No. 2,058,159 has a single tilting shaft. The plaintiff's commercial product embodies the two shafts of the reissue patent, and has met with considerable commercial success in a highly competitive field.

The plaintiff contends that Kuyper's contribution consisted in conceiving the idea of making a unit head with all the working parts inside and then reorganizing and reconstructing such parts so as to fit within the head and form a practical commercial product. We do not doubt that the patentee devised an improved Venetian blind structure, but we are unable to accept the conclusion that what he did amounted to invention.

The concept of concealing the working parts within a box or housing was not a new idea. It is shown in the British patent to Brownfoot (1855) and in Reissue No. 6941 to Widemann (1876). Brownfoot discloses a housing having a bottom and a pair of upwardly extending side walls with the raising pulleys and the tilting pulley located therein. The tilting bar is hung below the housing, but the ladder tapes extend into it and run over drums mounted therein. As in the patents in suit, Brownfoot has openings in the bottom of his housing through which pass the tilting cord, ladder tapes, lifting cords and locking cord. Widemann specifically claims the combination of the ladder tapes, slats "and a detachable box, G, to which the ladders are hung and within which the roller E and adjusting appliances are arranged, substantially as specified." There is no patentable distinction between the casing of Brownfoot or Widemann and the housing of Kuyper specified in every claim in suit. Hence invention, if invention there be, cannot rest upon the concept of concealing the working parts but must rest upon Kuyper's arrangement of the parts within the housing.

To show that Kuyper's arrangement of parts did not require invention, the defendant relies heavily on the British patent to Clarke (1864). Clarke's drawings, figures 2 and 3, disclose a box or housing (referred to in the specifications as a "frame") having a bottom and two upwardly extending sides. His arrangement of the working parts is very similar to that of Kuyper's patent No. 2,058,159. His avowed purpose was to do away with the conventional tilting bar, and in place thereof he suspends his blind from a tilting shaft ("spindle") which is concealed within the "frame", except at one end where it is attached to the tilting pulley, K. The ladder tapes terminate at the top slat and the ends of the tapes are attached to cords which pass through openings in the bottom of the housing and are wound once around rubber sockets or pulleys mounted on the tilting shaft. As in the patents in suit, bearings are placed close to the sockets to prevent the shaft from sagging under the weight of the blind. The lifting cords run over pulleys mounted within the housing, although from figure 1 of the drawings it would appear that their lower portion extends somewhat below it. Reliance is also placed upon patent No. 529,-770 to Wilson which is particularly interesting because he criticizes the conventional blind and its tilting bar on the ground that this form of construction requires "the use of a visible and heavy upper slat." He discloses a tilting shaft mounted upon a supporting bar which has openings designed for the passage of the tilting cord, ladder tapes, lifting cords and a lift cord lock. The ladder tapes are secured directly to the tilting shaft. The

rest of the operating parts are also located within or above the supporting bar. Wilson's drawings do not show a housing nor do his specifications mention one, but it may perhaps be inferred from his criticism of a "visible" and heavy upper slat that he meant to conceal the working parts of his blind. So Judge Raymond found in the case of Rolscreen Company v. Kirsch Company, D.C.W.D.Mich.[1] At any rate, as suggested by Judge Raymond, it would require no invention to conceal the parts by means of fascia boards attached to the supporting bar and extending upwards therefrom, which in practical effect would form a housing.

The Clarke patent is criticized as a reference for several reasons. First, because the ladder tapes do not extend into the housing and the extension cords are unsightly, but it would require no inventive genius to eliminate this defect in view of Brownfoot and Wilson. The plaintiff urges that it would be impossible to extend Clarke's ladder tapes into the housing, because he does not have the equivalent of Kuyper's enlargements on his tilting shaft and hence must wind his cords once around the shaft in order to allow adequate tilting of the slats. But in figure 5 of Patent No. 2,058,159, Kuyper shows his ladder tapes wound once around the enlargements, and no reason is apparent why Clarke's tapes could not similarly be wound around his shaft. At any rate, invention cannot be predicated upon the existence of the enlargements. Their purpose is merely to provide a sufficient diameter adequately to tilt the slats, and the problem of making the shaft large enough for this purpose is in its nature the same whether a thin shaft is used, as in Kuyper, thus necessitating the use of enlargements, or a larger shaft of the same diameter throughout is used, as in Wilson, for example. And arriving at a proper diameter for the shaft would be a matter of experimentation and not of invention. Clarke is further criticized because his tilting shaft extends slightly beyond one end of his housing where it is attached to the pulley K. But invention would not be required to extend the casing to include the pulley K as would be the case if a pulley were mounted upon Wilson's tilting bar and fascia boards attached to his support bar. The resulting arrangement would then be similar to that seen in figure 4 of Patent No. 2,058,159 where the tilting cord is attached to a drum mounted directly on the tilting shaft.

In view of the prior patents above discussed we are convinced that the claims in suit are invalid for want of invention. Claims 17, 18, 19, 21 and 27 of Patent No. 2,058,159 may be considered together. They call for a metal support in the form of a housing, (2) a shaft carried by said support and concealed between the walls thereof for suspending the blind, (3) which shaft is rotatable in order to tilt the slats, (4) enlargements upon the shaft to which enlargements the ladder tapes are secured, and (5) bearings for rotatably supporting the shaft and placed closely adjacent to the enlargements. Such an arrangement of the working parts involved no invention in the light of Brownfoot, Wilson and particularly Clarke. Claims 20, 22, 23, 24 and 28 call for, in addition to the elements already discussed, a transverse shaft which rotates the tilting shaft by means of gear connections that also serve to retain the tilting shaft in any of its adjusted positions. Clarke did not have such transverse shaft and gears, but such mechanism was old in Venetian blind construction, as seen in Hughes No. 857,066, and their substitution for Clarke's pulley K would involve no more than mechanical skill. Kuyper himself treated the two forms of construction as equivalents, for in figure 4 of No. 2,058,159 he eliminates the transverse shaft and gears and attaches the tilting cord to a drum mounted directly on the tilting shaft. Invention cannot be predicated upon the ability of the gears to retain the tilting shaft in its adjusted positions, for this is the simple result of introducing sufficient friction into the assembly.

Claims 15, 18 and 25 to 27 of Reissue No. 20,133 are the claims in issue under this patent. As has been mentioned this patent shows two tilting shafts, but the claims in suit are broad in scope and do not expressly require two shafts. If the "rotary means" or "shaft means", which these claims mention, be limited by the specifications to a two shaft construction, the defendant does not infringe for its structure has but a single shaft. In general, the claims call for the same elements as do the claims of Patent No. 2,058,159 but they also require openings in the bottom of the housing for the passage of ladder tapes, tilting cord, lifting cords and lifting cord lock. The prior art already

---

[1] No opinion for publication.

discussed invalidates these claims, if they be read broadly enough to cover the defendant's single shaft structure.

Against the conclusion of invalidity of the claims in suit, it is urged that the prior patents made no impression upon the commercial art; that they show merely unsuccessful attempts to meet a long felt want, and really point to the merit of Kuyper's contribution since the blinds marketed by the plaintiff under his reissue patent met with immediate commercial success. But the argument is not persuasive in the light of the fact that until about the time of the Chicago Exposition in 1933 and 1934 there was no demand for straight, unadorned hangings and no objection to concealment of the working parts of Venetian blinds by draperies. The failure of the earlier patents to attain commercial success shows merely that there was no demand for the improvements those patentees devised, not a long felt want which no one before Kuyper had been able to meet. We think that the plaintiff's commercial success is ascribable to the fact that, when the demand for Venetian blinds revived in 1933 and 1934, he was the first to sense the change in popular taste, and having sensed it, he was immediately able to rearrange the conventional blind to give the public what it desired. Being chargeable with knowledge of what his predecessors had done, his rearrangements required no more than the skill of the calling.

The decree is reversed with directions to dismiss the bill of complaint.